UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:11-cr-00158-JAW |
| | ) | |
| REGINALD S. GRACIE, JR. | ) | |

**ORDER ON MOTION TO DISMISS INDICTMENT**

The Court concludes that the Defendant's argument that the Court lacks subject matter jurisdiction depends on facts that must be found by a jury and may not be resolved in a motion to dismiss the indictment.

**I.    STATEMENT OF FACTS**

    **A.    Procedural History**

On September 23, 2011, a federal grand jury indicted Reginald S. Gracie, Jr. with six counts of conspiracy to violate 18 U.S.C. § 666—the federal anti-bribery statute, nineteen counts of soliciting and accepting kickbacks in violation of 18 U.S.C. § 666(a)(1)(B), and two counts of filing false tax returns in violation of 26 U.S.C. § 7206(1). *Indictment* (Docket # 1). On November 15, 2011, Mr. Gracie moved to dismiss Counts 1 through 25 of the indictment (all of the § 666 counts) on jurisdictional and constitutional grounds. *Def.'s Mot. to Dismiss Counts 1-25 of the Indictment* (Docket # 19) (*Def.'s Mot.*). The Government responded, opposing the motion to dismiss and asserting that the Court has subject matter jurisdiction because the indictment alleges offenses against the United States. *Gov't Resp. in Opp'n to Def.'s Mot. to Dismiss Counts 1-25 of the Indictment* (Docket # 21) (*Gov't*

*Resp.*). Mr. Gracie replied on December 13, 2011. *Def.'s Reply to Gov't's Opp'n to Mot. to Dismiss Counts 1-25 of the Indictment* (Docket # 22) (*Def.'s Reply*).

### B. The Indictment

The indictment alleges that during fiscal years ending September 30, 2006 and September 30, 2007, the Penobscot Indian Nation (Nation) was a federally-recognized Indian tribe in the state of Maine. *Indictment* at 1. During each of these years, the indictment states the Nation received federal funds totaling more than $11 million. *Id.* The indictment charges that the Nation wholly owned and operated PIN Rx, LLC, a limited liability company organized under the laws of the state of Maine, and that PIN Rx was initially established to provide pharmacy services to tribal members and to provide mail order prescription pharmacy services to publicly-funded pharmacy benefit programs. *Id.* The indictment alleges that between about November 1, 2005 and July 12, 2006, the Nation received approximately $219,535 in federal funds from a Rural Business Enterprise Grant funded by the United States Department of Agriculture to pay for equipment and other expenses of PIN Rx. *Id.* The indictment further asserts that MaineCare is a health benefit program jointly funded by state and federal funds and that from January 2006 to October 2006, PIN Rx received more than $5 million from the state of Maine in MaineCare reimbursements for prescriptions that PIN Rx filled for MaineCare members. *Id.* at 2. It says that in 2006, approximately 62.9% of MaineCare funds were federal funds from the United States Department of Health and Human Services. *Id.*

The indictment charges that on September 30, 3005, PIN Rx hired Mr. Gracie, a registered pharmacist in the state of Maine, as Director of Operations, and on April 3, 2006, he assumed the duties of Pharmacist in Charge, the person legally and professionally responsible for all activities related to the practice of pharmacy within the retail drug outlet. *Id.* at 2-3. The indictment alleges that in his capacities within PIN Rx, Mr. Gracie violated § 666 by personally soliciting and accepting money from certain internet drug companies to fill orders from their customers. *Id.* at 4-5.

C.  **The Pending Motion**

In Mr. Gracie's motion to dismiss Counts 1-25 of the indictment, he claims that the Court lacks subject matter jurisdiction because PIN Rx was not an organization receiving federal benefits of over $10,000 within the meaning of 18 U.S.C. § 666(b). He argues that: (1) federal funds received by the Nation cannot be imputed to PIN Rx, a separate legal entity; and (2) state of Maine Medicaid payments to PIN Rx for filling prescriptions for Medicaid recipients do not constitute federal benefits received by PIN Rx.[1] *Def.'s Mot.* at 2-8.

---

[1] Mr. Gracie also mentions in passing that "in this specific factual situation, the application of § 666 exceeds Congress's authority under the Spending Clause, Art. I, § 8, cl. 1, and Necessary and Proper Clause, Art. I. § 8, cl. 18." *Def.'s Mot.* at 1. For support, he generally cites *Sabri v. United States*, 541 U.S. 600, 605 (2004). *Id.* In a footnote, Mr. Gracie admits that in *Sabri* the Supreme Court rejected a facial challenge. *Id.* at 1 n.1. However, again citing *Sabri*, he asserts that "the *Sabri* Court noted that a better approach is to consider these issues on a fact-specific basis." *Id.* Unlike his other arguments, Mr. Gracie fails to further develop his constitutional challenges.

    First, the Court disagrees with Mr. Gracie that in *Sabri*, the Supreme Court was inviting a fact-specific challenge to § 666. Instead, from the Court's perspective, the *Sabri* Court was only explaining that a facial challenge failed, not that an as-applied challenge would succeed. Second, in *Sabri*, the Supreme Court was addressing precisely the same procedural vehicle Mr. Gracie is using here: a motion to dismiss the indictment. *Sabri*, 541 U.S. at 603-04. Mr. Gracie does not explain why his motion to dismiss is not the same type of facial challenge the Supreme Court rejected in *Sabri*. Third, casually mentioning the Spending and Necessary and Proper Clauses, citing only one

3

The Government responds that the Court does have subject matter jurisdiction because Counts 1-25 of the indictment allege violations of federal law given that both the federal funds paid to the Nation and the Medicaid payments received by PIN Rx constitute federal benefits under 18 U.S.C. § 666(b). *Gov't's Resp.* at 3-11. The Government submits that the determination of statutory federal benefits is fact-based and cannot be undertaken before evidence is presented at trial. *Gov't's Resp.* at 5.

Mr. Gracie's reply points out that the indictment does not allege that PIN Rx directly received money from the federal government or that Mr. Gracie was an agent of the Nation but merely charges that the Nation received grants from the federal government and that the Nation invested in and had an ownership interest in PIN Rx. *Def.'s Reply* at 3. Mr. Gracie argues that this investment in a distinct legal entity was akin to a commercial transaction, and therefore, as a matter of law, the indictment is insufficient to support criminal subject matter jurisdiction. *Def.'s Reply* at 3.

## II. DISCUSSION

### A. Legal Standard for Motions to Dismiss an Indictment

Rule 12(b) of the Federal Rules of Criminal Procedure provides that "at any time while the case is pending, the court may hear a claim that the indictment . . . fails to invoke the court's jurisdiction." FED. R. CRIM. P. 12(b)(3)(B). However,

---

case that upheld § 666 against constitutional attack, and adding nothing further does not amount to an argument. If Mr. Gracie is serious about weighing a constitutional challenge to § 666, he is free to do so, but he must develop his argument. For now, the Court considers the constitutional arguments so bare bones that they are deemed waived. *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 21 (1st Cir. 2009) (noting that a court is not required to address undeveloped claims).

"dismissing an indictment is an extraordinary step," *United States v. Li*, 206 F.3d 56, 62 (1st Cir. 2000) (quoting *United States v. Stokes*, 124 F.3d 39, 44 (1st Cir. 1997)), because, by returning an indictment, a grand jury is carrying out a constitutionally sanctioned function. *See* U.S. CONST. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ."). "When a federal court uses its supervisory power to dismiss an indictment it directly encroaches upon the fundamental role of the grand jury. That power is appropriately reserved, therefore, for extremely limited circumstances." *Whitehouse v. United States District Court*, 53 F.3d 1349, 1360 (1st Cir. 1995) (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988)). For this reason, unlike a complaint initiating a civil action, "an indictment is not generally subject to dispositive motion practice." *United States v. Poulin*, 645 F. Supp. 2d 17, 22 (D. Me. 2009); *see also Li*, 206 F.3d at 62.

"When grading an indictment's sufficiency," the First Circuit instructs that the Court "look to see whether the document sketches out the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense." *United States v. Guerrier*, No. 10-2315, 2011 U.S. App. LEXIS 25555, at *3 (1st Cir. Dec. 22, 2011). At this stage, the Court "must accept the allegations in the indictment as true." *United States v. Young*, 694 F. Supp. 2d 25, 27 (D. Me. 2010) (citing *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 327, 343 n.16 (1952)). Therefore, a motion to

dismiss is an inappropriate way "to test the sufficiency of the evidence behind the indictment's allegations." *Guerrier*, 2011 U.S. App. LEXIS 25555, at *4. This rule applies even where the defendant is claiming a lack of subject matter jurisdiction. *Id.* ("[U]nless prosecutors have made what can fairly be described as a full proffer of the evidence they intend to present at trial to satisfy the jurisdictional element of the offense, the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss the indictment") (citation and internal quotation marks omitted). *See United States v. Gonzalez-Mercado*, 402 F.3d 294, 300-01 (1st Cir. 2005) ("A federal criminal case is within the subject matter jurisdiction of the district court if the indictment charges that the defendant committed a crime described in a federal criminal statute").

**B.** **Section 666**

Section 666 of title 18 states in part:

(a) Whoever, if the circumstance described in subsection (b) of this section exists—
   (1) being an agent of an organization, or of a State, local or Indian tribal government, or any agency thereof—
       (A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that—
          (i) is valued at $5,000 or more, and
          (ii) is owned by, or is under the care, custody, or control of such organization, government, or agency; or
       (B) corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization,

6

           government, or agency involving any thing of value $5,000 or more . . . .
        shall be fined under this title, imprisoned not more than 10 years or both.
- (b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

18 U.S.C. § 666(a)-(b). Liability under the statute is thus predicated upon a showing that the defrauded organization received federal benefits.

### C. PIN Rx and Federal Benefits

Mr. Gracie argues that (1) because the indictment alleges that the Nation was the direct recipient of a Department of Agriculture grant, it was the Nation, and not PIN Rx, that received federal funds; and (2) because Medicaid payments to PIN Rx were state-administered, PIN Rx did not receive the funds as federal benefits within the meaning of § 666. *Def.'s Mot.* at 4-8. The flaw in Mr. Gracie's argument is that it requires a legal resolution of fact-based issues.

In *United States v. Fischer,* 529 U.S. 667 (2000), the Supreme Court addressed a similar issue—whether a health care provider's receipt of Medicare payments amounted to a "benefit" under § 666. The Supreme Court observed:

> Our discussion should not be taken to suggest that federal funds disbursed under an assistance program will result in coverage of all recipient fraud under § 666(b). Any receipt of federal funds can, at some level of generality, be characterized as a benefit. The statute does not employ this broad, almost limitless use of the term. Doing so would turn almost every act of fraud or bribery into a federal offense, upsetting the proper federal balance. To determine whether an organization participating in a federal assistance program receives "benefits," an examination must be undertaken of the program's structure, operation, and purpose. The inquiry should examine the

7

> conditions under which the organization receives the federal payments. The answer could depend, as it does here, on whether the recipient's own operations are one of the reasons for maintaining the program.

*Id.* at 681. This discussion clarifies that whether an organization like PIN Rx may be found to have received federal benefits within the meaning of § 666 is a fact-intensive inquiry. Following *Fischer*, the First Circuit in *United States v. Dubon-Otero*, 292 F.3d 1 (1st Cir. 2002), rejected the notion that because an organization indirectly receives federal money, it cannot as a matter of law fit within the statute. *Id.* at 9.

Here, the indictment alleges that the federal government distributed funds to the Nation in excess of $11 million, that PIN Rx was wholly-owned by the Nation, that the Department of Agriculture remitted funds to the Nation to pay for PIN Rx equipment and other expenses, and that PIN Rx received more than $5 million in MaineCare payments, 62.9% of which was federal funds. *Indictment* at 1-2. It remains to be seen whether the evidence in this case will be sufficient to establish that because of its "structure, operation, and purpose," PIN Rx received "benefits"— either indirectly through the Nation or directly through MaineCare—within the meaning of § 666(b). However, because the facts necessary to make this determination can be found only upon "a trial of the general issue," FED. R. CRIM. P. 12(b)(2), the Court cannot reach through a motion to dismiss whether the Government will ultimately be able to prove these assertions.[2]

---

[2] In *Guerrier*, the First Circuit observed that if the Government elected to make a "full proffer of the evidence they intend to present at trial," a court could evaluate whether that evidence is sufficient to establish jurisdiction. 2011 U.S. App. LEXIS 25555, at *4. However, the Government has made no such proffer in this case.

8

## III. CONCLUSION

The Court DENIES the Defendant's Motion to Dismiss Counts 1-25 of the Indictment (Docket # 19).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 30th day of December, 2011